Shuck et ux. *v.* Ligonier Borough, Appellant.

Argued September 29, 1941. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Carroll Caruthers,* with him *Willis E. Topper,* for appellant.

*Edward P. Doran,* with him *Edward B. Doran,* for appellees.

OPINION BY MR. JUSTICE MAXEY, November 24, 1941:
Plaintiffs, the owners and proprietors of the Fort
Ligonier Hotel located on Loyalhanna Street, in the Bor-

ough of Ligonier, filed a bill in equity asking the Court of Common Pleas to enjoin the defendant from removing four shade trees in front of the plaintiffs property. The Borough was making certain improvements on the streets of the municipality. These called for the destruction and removal of the trees in controversy. The bill set forth, inter alia, that the streets of the Borough of Ligonier "are lined with numerous large shade trees" and that the people "have consistently sought to preserve the atmosphere of quiet and beauty by accommodating the improvements of the streets and ways to the preëxistent conditions, by paving and curbing so as to leave the trees undisturbed". The plaintiffs complain that lately the said Borough of Ligonier, by its officers, "has cut down and removed a large number of trees on Church Street, lying North of and parallel to the Lincoln Highway in said Borough, and more recently, has begun and is now engaged in the cutting down and removal of trees on both sides of Loyalhanna Street, running parallel to and lying one block South of the Lincoln Highway, being the street upon which the premises of the plaintiff abut, and so far have removed from said street eight or more trees, two of them along the line of property of the plaintiffs, and threaten to cut down and remove four remaining old and large maple trees on said street adjoining the premises of the plaintiffs, as well as some or all of nine other similar trees upon said street in the vicinity of the plaintiffs' hotel."

An answer was filed and a hearing held and after the hearing the court below found as facts, inter alia: "(14). That the established width of Loyalhanna Street between the property lines is forty feet. The central twenty four feet. thereof, from Market Street Southwardly to and past the plaintiffs' premises, constitute the improved cartway, leaving for sidewalk purposes eight feet between the cartway and the property lines, on either side of the street. In the recent improvement of the cartway on the portion of the street mentioned, the

grade has been lowered to some extent along the property of plaintiffs, and has been paved with macadam to the full width of twenty four feet, except where the natural earth formation has been undisturbed at the base of each of the four trees which remain standing along the property of the plaintiffs. (15). That a line drawn parallel to the center of the street and passing through the centers of the trees mentioned would be six and a half feet distant from the property line, so that the trees themselves, being less than eighteen inches in diameter, are wholly within the sidewalk area, but the undisturbed ground at the base of the trees projects to an appreciable distance, approximately a foot, on the twenty-four foot cartway. (16). That the plan for improvement being prosecuted by the defendant Borough called for the removal of the trees in question, lowering of the grade of the sidewalk area to approximately the level of the cartway, and the erection of an adequate wall on the Northerly edge of the sidewalk area to retain the plaintiffs' premises in place. The defendant Borough, by its employees had proceeded with the work, and had taken up the sidewalk, . . . and had cut down two trees, at the time the Injunction was granted in this case." The court below also found as a fact that "the sidewalk adjoining the southern line of the plaintiffs' property has been raised and made irregular, due to the curving of tree roots under the said sidewalk".

The court below concluded as a matter of law that, "under the evidence in this case, the adoption by the Council of the Borough of Ligonier of the program for widening and paving of the cartways in the streets of the Borough to predetermined widths involving the removal and destruction of the ornamental trees that interfere with the prosecution of the program, is unnecessary, unreasonable and arbitrary, and the proposed action in the instant case, pursuant to the program, should be enjoined and restrained."

It is conceded that the trees in question are all within the confines of Loyalhanna Street and are not on the property of the plaintiffs. The good faith of the Council is not impugned. The issue, therefore, is whether the Chancellor of the court below was justified in substituting his judgment in the matter of the management and control of Borough streets for that of the Municipal authorities whose duty and responsibility it is to determine the question. There is no doubt that under the Borough Code of Pennsylvania the Municipal authorities have the power to regulate the roads and streets, of the municipality and to remove any obstruction or nuisance in the highways of the borough. (May 4, 1927, P. L. 519, article 12, section 1202, clause 8, 53 PS section 13320.)

The control of a borough over its streets and sidewalks is well defined in *Livingston v. Wolf*, 136 Pa. 519, 20 A. 551, where this court said, inter alia: "Among the subjects of municipal control is that of opening, vacating, and management of streets and alleys. The city or borough may decide when and where it will open streets, what shall be their width, and how much of that width shall be devoted to a carriage way, and how much to footwalks. It may say where trees shall be planted within the street limits, where and how hitching posts shall be set, telegraph poles erected, or passenger railways built. Its decision in such matters may subject a few persons to some inconvenience, or possibly to some substantial loss, but it has the power to decide on such subjects. The foot ways no less than the carriage ways are under municipal control, and the authorities may determine the extent to which the walks and pavements may be obstructed by cellar doors, door-steps, awnings, projecting windows, cornices, and the like. This power must be exercised by regulations that are general and uniform, that are reasonable and certain, and that are in conformity with the constitution and laws. When so exercised, it is binding on all the inhabitants of the municipality."

In the recent case of *Nelson v. Duquesne Light Company,* 338 Pa. 37, 12 A. (2d) 299, this court declared there rested on municipalities "the duty of keeping its streets clear of obstructions which are both dangerous and unnecessary and which with reasonable care could be avoided."

We must in this case presume that the officials of the defendant borough used their unprejudiced judgment in ordering the trees to be removed, and that they would not order attractive shade trees to be removed from the side of the street unless such removal was necessary. The court below found on ample evidence that "Loyalhanna street previous to the cutting complained of, was a beautiful, shady thoroughfare, arched with trees". Dillon in his Municipal Corporations (5th ed.), Vol. 2, section 721, aptly says: "Shade trees in the city streets are regarded with favor, and do *not constitute a nuisance* unless they are an actual obstruction to travel along the street or highway". Dillon also says in the same section: "Hence, in many cases it is laid down that the city authorities cannot declare such trees to be a nuisance, and direct their abatement as such, in the absence of actual obstruction to travel. But other decisions seem to have adopted a *qualified rule* and hold that by virtue of the control of the city over the streets the question whether trees growing on a sidewalk are an obstruction is to be determined by the city, and its determination that they are and should be removed as nuisances will not be reviewed by the courts. The title or interest of the abutting owner in the shade trees must *yield to the power of the city* to grade the street, or to build sidewalks, or otherwise improve it. For any injury resulting therefrom the abutting owner has no redress".

The courts of this commonwealth have in several cases exercised the right of review of the action of municipal authorities in regulating the use of the public streets. We have said, for example, that "the rules and regulations [as to the use of driveways] must be reason-

able, striking a balance between the public and the private interest": *Breining et ux. v. Allegheny County,* 332 Pa. 474, 482; 2 A. (2d) 842. We also said in the same case (p. 483) that the judiciary should "relieve [the citizen] against oppressive and arbitrary action".

This record does not present a case of such action on the part of the defendant borough. There is nothing presented to us which overcomes the presumption that these borough officials acted lawfully and in the exercise of a sound descretion in the discharge of the public trust committed to their keeping.

The decree is reversed at appellees' cost.