DISSENTING OPINION BY
President Judge PELLEGRINI.
The City of Lancaster (City), a home rule municipality,[1] enacted Chapter 263 of the City Code entitled “Right of Way Management” imposing certain requirements on entities whose facilities occupy the City’s right-of-way, including public utilities. The issue in this case is whether the Public Utility Code[2] preempts local municipalities from including public utilities in a comprehensive management plan that seeks to regulate the occupation of the public right-of-way between the varying public and private interests whose facilities occupy the public streets. With the exception of a provision that imposes an annual maintenance fee, the majority finds that the comprehensive plan provisions are preempted by the Public Utility Code. Because I would find that the right-of-way comprehensive management plan embodied in Chapter 263 of the City Code is specifically recognized rather than be preempted,[3]1 respectfully dissent.
*855 I.
Before examining whether municipalities have been preempted from regulating public utilities, we must first look at the nature of the right-of-way.[4] When a municipality, by dedication or'otherwise, obtains a public right-of-way, it is held in trust for the public. A municipality is not restricted to using the street only for the public’s right of passage and may allow additional use of the right-of-way as long as it is for a use that serves the public generally, is consistent with its use as a public street, and does not burden the abutting property owner’s property. In re City of Altoona, 479 Pa. 252, 388 A.2d 313 (1978). However, the fee owner does not surrender his entire title to the land so dedicated, but reserves the fee in the residue and may exercise full rights of ownership to that residue, above and below the surface. Breinig v. County of Allegheny, 332 Pa. 474, 2 A.2d 842 (1938); Gramlich v. Lower Southampton Township, 838 A.2d 843 (Pa. Cmwlth.2003); Miller v. Nichols, 363 Pa.Super. 508, 526 A.2d 794 (1987).
■ Initially, whether the occupation of the street by. public utilities and street railroads was for a public purpose was problematic because the nature of the company was partly public and partly private, that is, although for-profit, it had public privileges and public duties. Delos F. Wilcox, Municipal Franchises, Vol. II, § 277 (1910). See also Shuster v. Central District & Printing Telephone Co., 34 Pa.Super. 513 (1907) (property owner entitled to compensation for telephone wires placed along street); Berlew v. Electric Illuminating Company, 1 Pa.C.C. 651 (Northumb.1886) (requiring utility to pay the owner of abutting property compensation for putting poles and wires along the street). However, later, public utilities, cable, sewer, water, street railways, subways and steam heat were held for' public purposes and could occupy the right-of-way without compensating the abutting property owner.[5]
*856 As a result, beneath the streets of a municipality exists a network of walls, columns, cable pipes and tunnels that go over and around each other that are required to service the needs of the municipality’s inhabitants. Some of those facilities are those of public utilities that are subject to regulation by the Public Utility Commission (PUC); cable providers are regulated, in part by the federal government, while others by the municipality itself or municipal authorities and some by the.adjoining properties, who have lateral lines in the right-of-way to service their properties as well as vaults in the right-of-way.
The question then is who is going to facilitate and arbitrate" all of those' competing interests in the right-of-way, which are owned, operated and regulated by different entities, so that the public interest in all of them can be served. The answer to that. question is simple: the municipality that owns and maintains the right-of-way in trust for the public, ie., their citizens.
II.
In general, a municipality has the right to regulate the public right-of-way. Shuck v. Borough of Ligonier, 343 Pa. 265, 22 A.2d 735 (1941). Also, in general, a municipality can decide what entity is authorized in the right-of-way and under what conditions. That is only true “in general” because a municipality cannot prevent a public utility from using its right-of-way. However; it is also clear that a municipality can subject the public utility to “reasonable regulations.” Section 1511(e) of the Business Corporation Law of 1988 (BCL), 15 Pa.C.S. § 1511(e), gives the power to a public utility to place its public utility facilities in the right-of-way and also specifically subjects them to reasonable municipal regulation. It provides:
A public utility corporation shall have the right to enter upon and occupy streets, highways, waters and other public ways and places for one or more of the principal purposes specified in subsection (a) and ancillary purposes reasonably necessary or appropriate for the accomplishment of the principal purposes, including the placement, maintenance and removal of aerial, surface and subsurface public utility facilities thereon or therein. . Before entering upon any street, highway or other public way, the public utility corporation shall obtain such permits as may be required by law and shall comply with the lawful and reasonable regulations of the governmental authority having *857 responsibility for the maintenance thereof.
15 Pa.C.S. § 1511(e) (emphasis added),
Note that this provision gives public utilities the right to occupy the right-of-way; it does not give them the right to place facilities anywhere that they want. That is subject to reasonable regulation by the municipality.
Chapter 263 of the City Code regulates any entity that occupies the right-of-way. Recognizing that some facilities also have obligations to other regulators, it makes distinctions between public utilities, nonpublic utilities, and cable companies that occupy the right-of-way under franchises awarded by the City. Section 263B of the City Code addresses PUC-regulated utilities and authorizes the City to:
• conduct inspections to ensure that utility facilities in the rights-of-way do not constitute a public safety hazard and are in compliance. If they are not in compliance with such standards, it authorizes the City to bring a complaint before the PUC to seek compliance. It also allows the City to notify the Utility of the existence of any non-compliant facilities to voluntarily abate such violations. (Section 263B-3; Section 263D-1).
• direct a utility to “temporarily or permanently remove, relocate, change, or alter the position of any facilities within the Right-of-Way” under certain circumstances, including “the construction, repair, maintenance, or installation of any City or other public improvement,” “the operations of the City,” the “vacation of a Street Or the release of a utility easement,” or during emergency situations. Section 263B-4(6).
• imposition of an annual maintenance fee “in connection with the ongoing use and occupancy of City Rights-of-Way.” (Section 263B-5).
• allows for the imposition of a penalty for a violation of any provision of the Ordinance that is not within the exclusive jurisdiction of the PUC. (Section 263D-1). (The majority does not discuss this provision, because it is not preempted by its very terms.) .
I see nothing at this stage of the proceeding in these provisions that is preempted by the Public Utility Code and nothing that constitutes an “unreasonable regulation” within the meaning of Section 1511(e) oftheBCL.
Section 263B-3 of the City Code, which authorizes the City to inspect public utility facilities to ensure that such facilities do not constitute a public safety hazard and remain in compliance with PUC standards, does not make the City a regulator, but is. more like an instruction to the charged employees to make sure that the right-of-way is safe for the public, the' abutting owner and other users of the right-of-way. If a public utility facility is in such a condition as to pose a public safety hazard, Section 263D-1 only authorizes the City to file a complaint before the PUC to see that the public safety hazard is abated or to seek voluntary compliance from the public utility. Moreover, it follows the procedure specifically outlined in Section 1505(a) of the : Public Utility Code, 66 Pa.C.S. § 1505(a), set forth below.
The majority- finds that Section 263B-4(6)’s provision allowing it to grant to the City the power to order a public utility to remove, relocate, change or alter the position of any facilities' within the right-of-way whenever the City determines that it is “reasonably necessary” to ■ do so “or such shorter period in the case of an emergency” is preempted. It cites to Section 1505(a) of the Public Utility Code, which provides:
Whenever the commission, after reasonable notice and hearing, upon its own *858 motion or upon complaint, finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory, or otherwise in violation of this part, the commission shall determine and prescribe, by regulation- or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced, or employed, including all such repairs, changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and convenience of the public.
66 Pa.C.S. § 1505(a) (emphasis added). In essence, the majority reasons that the power to determine where facilities are located in the right-of-way does not fall within Section 1511(e) of the BCL giving municipalities the power to enact “lawful and reasonable regulations” regarding the right-of-way because it is not a matter of “local concern” and must be handled by the PUC as matter of statewide concern.
What that ignores is that what goes on in the right-of-way is a matter of local concern because municipalities are the ones that own and maintain them. If, for example, there is a gas line break 12 feet under a municipal water line, an order directing that the water line be temporarily relocated is eminently reasonable. Squarely put, the PUC could not issue such an order because it has no jurisdiction to order a municipal entity to move the line. That is why the General Assembly authorized municipalities to enact “reasonable regulations” concerning the public utilities’ use of the right-of-way.
Moreover, we must remember that the right-of-way is a finite resource and all of the public users have to be accommodated, not just the public utilities. The PUC only regulates public utility services and does not have any power over non-public utility users of the right-of-way. If it is determined that a cable or a water line has to be moved to accommodate a needed public utility service, it cannot order that those facilities have to be moved; only the local municipality which owns the right-of-way in trust for the public has the power to do so and to balance the interests of those involved.
Because Section 1511(e) of the BCL gives the power to municipalities to enact reasonable regulations, the municipality owns the right-of-way and I would deny PPL Electric Utilities Corporation’s application for summary relief for the foregoing reasons. Accordingly, I respectfully dissent.
Judge McGINLEY joins in this dissenting opinion.

. 66 Pa.C.S. §§ 101-3316.

. While it is often said that municipalities are creatures of the General Assembly and possess only such powers that are expressly granted to them, those formulations have not been accurate since our Constitution was amended in 1968 to provide that "[t]he General Assembly shall provide by general law for local government within the Common *855 wealth.” Pa. Const, art. IX, § 1. Since then, local government is an absolute right and the state cannot take it away. The Pennsylvania Constitution also provides that “[m]unicipalities shall have the right and power to frame and adopt home rule charters...." Pa. Const, art. IX, § 2. Home rule means that it is not the state's prerogative to run and operate the machinery of local government, but to' provide for it and to put it in operation and that a home rule municipality “may exercise any power or perform any function not denied by this Constitution, by its home rule charter or • by the General Assembly at any time.” Id. Precisely speaking, municipalities are not creatures of the General Assembly, but creatures of the Constitution so that local matters are addressed by local citizens and the officials that they elect.

. The public right-of-way is composed of the street which encompasses two distinct portions: the roadway used for vehicles and the sidewalk for pedestrians. Mercantile Library Co. v. Fidelity Trust Co., 235 Pa. 5, 83 A. 592 (1912). It can include the pavement, shoulders, gutters and curbs within the street lines. Granchi v. Borough of North Braddock, 810 A.2d 747 (Pa.Cmwlth.2002). The roadway is generally accepted as the paved and traveled portion. Babcock v. Department of Transportation, 156 Pa.Cmwlth., 69, 626 A.2d 672 (1993), appeal denied, 536 Pa. 647, 639 A.2d 33 (1994). While the sidewalk is a place set apart at the side of a street for use by that portion of the public who travels on foot, it need not be improved to be a sidewalk. Callahan v. A. Wishart & Sons Co., 365 Pa. 498, 76 A.2d 386 (1950). The remainder of the t public right-of-way is that area not used for either streets or sidewalks occupied by public utilities, cable and water and sewer lines and such.