## United States Steel Corp. v. The Monongahela & Ohio Dredging Co.

Before Soffel, Duff and Cercone, JJ.

*Frank W. Ittel*, for plaintiff.

*John A. Metz*, for defendant.

DUFF, J., November 10, 1958.—By an order of this court filed on February 20, 1958, it was decreed that a judgment on the pleadings would be entered for the United States Steel Corporation, plaintiff in this action in ejectment, unless The Monongahela & Ohio Dredging Company, defendant, filed an amended answer within 30 days setting forth the following data: (1) A survey of the property claimed by defendant; (2) a description by metes and bounds of the said property; (3) a denial that its land is within any part of plaintiff's property, as shown on plaintiff's survey; (4) an abstract of title clearly showing the sources of defendant's title; and (5) any other allegations essential to the trial of this case.

Defendant filed an amended answer on March 20, 1958.

The amended answer complies with that order to the extent of attaching a plan of property and a description by metes and bounds of the property occupied and claimed by defendant and admits that this land is within the boundaries of the property claimed by plaintiff and that defendant has no title thereto.

Defendant avers that the land claimed by plaintiff is within the boundaries of Bank Lane, later known as South Avenue and Shore Avenue, a public street in the plan of a reserve tract of land opposite Pittsburgh, which was laid out by the Commonwealth of Pennsylvania pursuant to the provisions of the Act of Assembly of March 12, 1783, 2 Sm. L. 62, and the Act of September 11, 1787, 2 Sm. L. 414, but it contends that said

land is not subject to private ownership and, therefore, plaintiff has no title to the land claimed by it.

Bank Lane had no fixed width and in this area its northern boundary was the southerly line of outlots nos. 23 and 24 and its southerly boundary was the Ohio River.

The complaint shows plaintiff's title is based upon: (1) The Act of December 22, 1951, P. L. 1717, 53 PS §24351-53, which provides, inter alia, that all the right, title and interest of the Commonwealth in and to all lanes and alleys laid out by the Commonwealth and not maintained by the Commonwealth, including its reversionary rights therein, which are now or may hereafter be located within the corporate limits of cities of the second class, is hereby ratified and confirmed as being vested absolutely in such cities and that Bank Lane, or Shore Avenue, was a street not being maintained by the Commonwealth in the City of Pittsburgh; (2) an ordinance of the City of Pittsburgh vacating the said lane, which extinguished the right of the public to any easement therein; and (3) deeds in fee simple from the City of Pittsburgh to plaintiff conveying, inter alia, all that portion of land which is within the bounds of the easterly line of Lighthill Street, as extended, the southerly line of outlot 23 in the reserve tract, the dividing line between outlots 23 and 24 in said reserve tract, as extended, and the Ohio River, part of which is occupied and claimed by defendant.

It is defendant's contention, relying upon Snowden v. Loree, 122 Fed. 493, and other early cases, that the Commonwealth had no power to convey fee simple title to the land claimed by plaintiff and situate within the boundaries of said Bank Lane.

At the time of Snowden and other early cases cited by defendant, the question before the court differed from the present instance in that the assembly had

neither terminated public rights of easement in Bank Lane by legislative act nor invested municipal corporations with title to convey or authority to vacate.

We are of opinion that the plotting and laying out of Bank Lane did not constitute a dedication of the soil beneath the highway. The plan created a street, a servitude in favor of the public for travel. The Commonwealth remained the owner of the bed of the street, with full power to alienate its interest therein, subject to the servitude.

The Act of December 22, 1951, P. L. 1717, supra, effected a transfer of its title in the bed of the street and the city thereupon had the power to vacate the street and terminate the rights of the public therein.

In Peterson v. Pittsburgh Public Parking Authority, 383 Pa. 383, 388, it is said:

" 'The public may accept or reject the easement tendered by the owners of the plan of lots, or having accepted may renounce the public right by a vacating ordinance, but no act of the public authorities can operate to divest the property rights of the lot owners resulting as a legal consequence from the implied covenants under which they purchased.' "

We conclude that the City of Pittsburgh acquired title in fee simple to the land claimed by plaintiffs and that it conveyed its title to plaintiff herein, divested of the easement in favor of the public in said Bank Lane or Shore Avenue.

We are not concerned here with the question of private easements or riparian rights. Certainly whatever rights of this nature may exist cannot inure to defendant, which has shown no title to the land occupied by it, nor private easement to the use of the vacated street, much less the right to occupy a portion of it for its own use for business purposes.

Accordingly, judgment will be entered for plaintiff.

*Order*

And now, to wit, November 10, 1958, the motion of the United States Steel Corporation, plaintiff, for judgment on the pleadings is granted and it is ordered and decreed that plaintiff recover possession of the land described in the complaint and judgment be entered in favor of plaintiff and against The Monongahela & Ohio Dredging Company, defendant, for recovery of possession of the lands described in the complaint.

Eo die, exception noted to defendant and bill of exception sealed.