G. C. Murphy Co. et al., Appellants, *v.* Redevelopment Authority.

Argued January 11, 1974. Before JONES, C. J., EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

*John M. Wolford,* with him *MacDonald, Illig, Jones & Britton,* for appellants.

*John M. Quinn,* with him *James J. McDonald, Jr., James G. Hanes,* City Solicitor, and *Quinn, Gent, Buseck & Leemhuis,* for appellees.

*Will J. Schaaf* and *Marsh, Spaeder, Bauer, Spaeder & Schaff,* for intervenors.

OPINION BY MR. JUSTICE POMEROY, October 16, 1974:

Appellants, who are owners and lessees of properties fronting on State Street in the City of Erie, brought this action against the City of Erie and the Erie Redevelopment Authority to enjoin the creation of a four block "Transitway Mall" on State Street between Sixth and Tenth Streets. The chancellor denied the requested relief, and the court en banc dismissed appellants' exceptions to the decree nisi in a final decree. This appeal followed.[1]

By a resolution of February 12, 1965, the Erie City Council adopted a redevelopment proposal submitted by

---

[1] Because this appeal primarily involves the powers of a city of the third class, jurisdiction of the appeal would ordinarily lie in the Commonwealth Court under the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, No. 223, Art. IV, §402, 17 P.S. §211.402. Since this Court has not transferred the case to the Commonwealth Court, the failure of appellees to object to our appellate jurisdiction perfects that jurisdiction under §503(a) of the Act, 17 P.S. §211.503(a).

the Redevelopment Authority of the City of Erie ("the Authority") for the downtown Erie business district. The proposal embraced a twelve block area, including portions of State Street, a major traffic artery which runs on a North-South axis through the core of the business district. As originally conceived, the proposal included a pedestrian mall on West Eighth Street between Peach Street and State Street. The location of the proposed mall was indicated on a land use map appended to an Urban Renewal Plan ("the Plan") prepared by the Authority and recorded in the office of the Recorder of Deeds of Erie County. This same map showed State Street as a hundred foot wide right-of-way.

By a resolution adopted February 22, 1967, City Council determined that Eighth Street would remain open to vehicular traffic between Peach Street and State Street. Shortly thereafter, on March 15, 1968, a revised version of the Plan was recorded in the office of the Recorder of Deeds. This version of the Plan retained a provision for a "Pedestrian Mall or Plaza" as a part of the proposal for the downtown area, but the precise location of the mall was not specified either in the revised Plan itself or in the accompanying land use map.

On April 8, 1970, following a comprehensive study of traffic flow in the downtown area, City Council adopted a resolution approving preliminary plans for a "Transitway Mall" on State Street. Final plans submitted by the Authority for the Transitway Mall were approved by a resolution of City Council on March 29, 1972. These plans call for a division of the hundred foot right-of-way of State Street into two broad sidewalk areas, embellished with benches, trees and planters, and bisected by a two lane roadway, twenty-eight feet in width. The plans envisage that traffic on the

roadway will be restricted to buses, taxis, emergency vehicles and, during certain designated hours, service vehicles serving the establishments facing on the mall.

Appellants commenced this action on August 16, 1972 by filing a complaint in equity against the Redevelopment Authority and the City of Erie. A joint answer to the complaint was filed by the City and the Authority,[2] and the case was tried on its merits. As indicated above, the chancellor denied the requested relief, and the court en banc dismissed appellants' exceptions to the chancellor's decree nisi in a final decree entered August 3, 1973. In the meantime, on July 18, 1973, after the chancellor's decree nisi but before the final decree of the court en banc, City Council passed an ordinance authorizing construction of the Transitway Mall in accordance with the councilmanic resolution of March 29, 1972.[3]

At the outset, appellees challenge the equitable jurisdiction of the court on the ground that appellants had an adequate and exclusive remedy at law, *viz.,* an "appeal from the validity of the ordinance [authorizing the Transitway Mall] to the court of common pleas"

---

[2] Thirty-seven local commercial and banking establishments and a local college were permitted to intervene in the action as parties defendant under Pennsylvania Rule of Civil Procedure 2328 before an answer to the complaint was filed. It does not appear that they filed a separate answer to the complaint, but their counsel participated in the trial, and the record on appeal indicates that they are here as appellees. Three additional parties were permitted to join the original intervenors after the City and the Authority filed their joint answer to the complaint.

[3] This ordinance was enacted pursuant to the filing of petitions by a majority of abutting property owners in number and front footage along the site of the proposed mall. *See* the Act of June 23, 1931, P.L. 932, art. XXIX, §2918 *et seq.* Maintenance agreements relative to the proposed mall were also filed by a majority of abutting property owners. No challenge has been raised to the procedure by which the ordinance was enacted into law.

under §2920 of the Third Class City Code.[4]  Under this section, an "appeal" challenging the validity of an ordinance must be taken within thirty days from the passage of the ordinance.  Read in its statutory context, §2920 appears to be designed to expedite necessary street repairs and prevent waste in the expenditure of public funds for street improvements by limiting the time within which objections may be raised to procedural defects in the enactment of ordinances for the improvement, alteration, or vacating of city streets.  It is by no means clear that the legislature intended §2920 to be the sole means by which a litigant may challenge the general power of a third class city to create a Transitway Mall.  But we need not decide whether §2920 provides the exclusive statutory procedure for cases of this sort, precluding an action for an injunction or other equitable relief, see *West Homestead Borough School District v. Allegheny County Board of School Directors*, 440 Pa. 113, 269 A.2d 904 (1970), for even were we to assume this to be so, it would not follow that the appeal should be dismissed.

As we indicated above, this action was commenced and the chancellor's decree was entered before the ordinance of July 18, 1973 was passed.  Appellees did not object in the court below that the action was prematurely brought, and the objection to equity jurisdiction was raised for the first time on appeal.  To dismiss the case now would be be an affront to justice if the result would be to preclude appellants from proceeding under §2920 because the statutory thirty day period for challenging the ordinance has expired.  On the other hand, were we to vacate the decree below and direct a transfer to the law side of the court, thus in effect tolling the statutory time limitation, the ensuing retrial of the case would

---

[4] Act of June 23, 1931, P.L. 932, art. XXIX, §2920, as amended by the Act of June 28, 1951, P.L. 662, §29, 53 P.S. §37920.

be an expensive and time-consuming duplication of the proceedings before the chancellor. The parties are in substantial agreement as to the facts of the case, and the questions raised by appellants would inevitably come before us again on a second appeal. In light of these considerations, we decline either to order the case dismissed or to remand it for transfer to the law side of the court.

The main substantive issue before us is a narrow one: Is it within the powers delegated to the City Council of the City of Erie to alter the character of State Street, a public thoroughfare, in accordance with the proposal adopted by the Transitway Mall resolution of March 29, 1972? Erie is a city of the third class, and the police powers delegated by the state legislature to cities of this class are enumerated in the Third Class City Code.[5] These powers include general authority to "make and adopt all such ordinances, by-laws, rules and regulations, not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be expedient or necessary for . . . the maintenance of the peace, good government, safety and welfare of the city, and its trade, commerce and manufactures".[6] More specifically, third class cities, "with or without any petition of property owners, may open, widen, straighten, alter, extend and improve . . . any street, or any part thereof, . . . or may vacate and discontinue the same whenever deemed expedient for the public good".[7] The Code further provides that cities of this class may "improve any street, or part thereof, and the sidewalks thereof when included as part of the improvement . . . [and] may also provide for the improvement of any

---

[5] Act of June 23, 1931, P.L. 932, art. I, §101 et seq., as amended by the Act of June 28, 1951, P.L. 662, §1 et seq., and other acts, 53 P.S. §35101 et seq.

[6] §2403 of the Code, supra, n.4, 53 P.S. §37403(60).

[7] §2915 of the Code, supra, n.4, 53 P.S. §37915.

highway, or street, or any sections or parts thereof, in length, in the space between the curb, gutter, or actual carriageway line and the property line, either by an original work or an improvement thereon, or by a change, repair, renewal, or alteration in the said street or curb, or in parking spaces, or shade trees, or by changing, altering, renewing, replanting, pruning, or otherwise improving the same, in any or all of said particulars".[8] We have no doubt that the broad grant of powers over streets and sidewalks in these statutory provisions includes the power to make the physical alterations in State Street contemplated by the City Council and the Authority.

With respect to the regulation of traffic on the roadway of the mall, we find a similarly broad grant of power to cities and other political subdivisions in §1103 (a) of the The Vehicle Code.[9] This section provides that "local authorities . . . may regulate the kinds and classes of traffic and its turning on certain highways at all or certain hours".

Appellants contend that, even if the City Council is legally empowered to create the Transitway Mall, the proposed alteration of State Street will constitute a de facto vacation of the street, entitling abutting property owners to damages from the city. We need not pass on this contention, for even if it has merit, appellants are not entitled to injunctive relief. See *Schwab v. Pottstown Borough*, 407 Pa. 531, 180 A.2d 921 (1962). If construction of the mall will result in compensable injury to property of appellants, they have an adequate statutory remedy under the Eminent Domain Code.[10]

---

[8] §2930 of the Code, *supra*, n.4, 53 P.S. §37930.

[9] Act of April 29, 1959, P.L. 58, §1103(a), 75 P.S. §1103.

[10] Act of June 22, 1964, Special Session, P.L. 84, art. I, §101 *et seq.*, as amended, 26 P.S. §1-101 *et seq.* (1974 Supp.). *See particularly* §502(e), as amended by the Act of December 5, 1969, P.L. 316, No. 137, §1, 26 P.S. §1-502(e).

One of the appellants, George J. Weber, advances an alternative theory of relief predicated on his status as a purchaser of land from the Authority. The Authority sold land abutting on State Street in the area of the downtown urban renewal project to Weber and his wife on October 16, 1968. By the terms of a "Land Disposition Agreement" entered into by the parties, the Webers promised to develop the land in accordance with the Authority's modified Urban Renewal Plan, recorded in the office of the Recorder of Deeds. Weber points to a paragraph of the Plan which provides that "[t]his Urban Renewal Plan may be modified from time to time upon compliance with the same requirements of law governing for [sic] its initial adoption, including approval of such modification by the local governing body, *provided that with respect to any land in the project area previously disposed of by the Authority for use in accordance with the Urban Renewal Plan, the Authority receives the written consent of the then owner of such land whose interests therein are materially affected by such modification*". [Emphasis supplied.] He contends that the creation of the Transitway Mall is a modification of the Plan, and the failure to obtain his written consent to this modification entitles him to injunctive relief. There are three answers to this contention.

*First*, although the recorded Plan provides for a "Pedestrian Mall or Plaza" with "pedestrian walkways and vehicular access" in "a public area", the exact location of the mall is not specified in the Plan or in the accompanying land use map, and no provision of the Plan excludes State Street as a possible location for the mall. The choice of State Street as the site for the mall is not a "modification" of the Plan.

---

Nothing in this opinion should be construed as an expression of our views on the question whether construction of the mall will result in a compensable injury to appellant's properties.

*Second,* even if the Transitway Mall proposal constitutes a modification of the Plan, the proposal can be adopted without Weber's consent. As we read the Plan, it is only modifications "with respect to any land in the project area previously disposed of by the Authority for use in accordance with the Urban Development Plan" which require "the written consent of the then owner of such land whose interests therein are materially affected by such modification". This provision gives private redevelopers who purchase land from the Authority some measure of control over changes in land use restrictions on the property so acquired. It does not give private redevelopers veto powers over changes in the Plan with respect to public streets which have never been "disposed of" by the Authority.[11]

*Third,* the consent provision is in any event unenforceable against the City of Erie, in which is vested ultimate control over the fate of State Street. This is so even were we to assume (which we do not) that by approving the Urban Development Plan the City Council became a party to agreements between the Authority and its purchasers, such as Weber. "The state cannot bargain away its right to exercise at all times its police power, nor can a municipality, to which is delegated the right to exercise the state's police power over streets and highways, enter into any contract by which the free exercise of the power granted can be abridged, limited or destroyed". *City of McKeesport v. McKeesport & Reynoldton Passenger Ry.,* 2 Pa. Superior Ct. 242, 247 (1896) ; *see generally* 39 Am. Jur. 2d *Highways, Streets and Bridges,* §208 (1968).[12]

---

[11] The deed from the Authority to the Webers does not purport to convey title to any part of State Street. The property described in the deed is bounded on its western side by "the east line of State Street".

[12] Appellants also contend, presumably in their capacity as taxpayers, that evidence of waste and mismanagement by the Authority

Decree affirmed. Each party to bear own costs.

Mr. Justice NIX and Mr. Justice MANDERINO concur in the result.

Mr. Justice ROBERTS took no part in the decision of this case.

---

warrants an injunction against the creation of the Transitway Mall. An extended recitation and discussion of this evidence would serve no useful purpose. Suffice it to say that we have reviewed the chancellor's findings of fact and conclusions of law in the light of the record, and find no merit in this contention.