388 A.2d 313

In re Appeal from Passage of Ordinance 4354 of the CITY OF ALTOONA, Pennsylvania, Appellant.

In re David L. BAIRD and Linda Z. Baird, his wife, and Martin Goodman, and William T. Howe, Betty L. Howe, Janet Martin Schreiber, Thomas O. Martin and Dorothy V. Martin.

Supreme Court of Pennsylvania.

Argued Sept. 26, 1977.

Decided June 5, 1978.

Reargument Denied July 21, 1978.

John M. Elliott, Constance B. Foster, John F. Stoviak, Dilworth, Paxson, Kalish & Levy, Philadelphia, N. John Casanave, Altoona, for appellant.

Beth B. Croyle, Goodman, Notopoulos & Silverman, Altoona, for Baird and Goodman.

Paul S. Foreman, Altoona, James S. Routch, Patterson, Evey, Routch, Black & Behrens, Hollidaysburg, for William T. Howe, Betty L. Howe, Janet Martin Schreiber, Thomas O. Martin and Dorothy V. Martin.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

We are called upon to decide whether or not a municipality which has acquired a street by dedication may, when later it vacates the street, reserve to itself an easement for utility lines within the boundaries of the vacated street. We agree with the Commonwealth Court[1] that on the facts of this case, the question must be answered in the negative.

The record discloses that in 1951 Martin Goodman purchased a tract of land located in the City of Altoona and some six years later submitted to the City Planning Commission a proposed subdivision of the property. Included in the subdivision plan was a short street known as Kenyon Road which provided access into the subdivision area. While the proposed plan was under consideration by the Commission, a sanitary sewer was constructed along the right-of-way of Kenyon Road pursuant to an agreement entered into between Goodman and the City. Thereafter, the plan was

1. The opinion of the Commonwealth Court is reported *sub nomine In Re: Appeal from Passage of Ordinance 4354 of the City of Altoona, Pennsylvania,* 26 Pa.Cmwlth. 1, 361 A.2d 458 (1976). Judge Blatt filed a dissenting opinion.

approved and filed by the Planning Commission and accept-
ed by the City.[2]

The present controversy began in December of 1974,
when, in response to a petition of citizens who owned land
abutting on Kenyon Road, the City of Altoona passed Ordi-
nance 4354[3] vacating that road.   The ordinance did more

2.  The acceptance of the dedication by the City was not accomplished
    by ordinance, but by maintaining the road, placing shale thereon and
    removing snow therefrom.   The sufficiency and validity of the ac-
    ceptance are not in dispute.

3.  Ordinance 4354 provides:
                      "AN ORDINANCE—4354
    "PROVIDING FOR THE VACATION OF KENYON ROAD BE-
    TWEEN RUSKIN DRIVE AND SOUTH ONE HUNDRED SEVEN-
    TY–FIVE (175') FEET TO LANDS OF MARTIN GOODMAN, SITU-
    ATE IN THE CITY OF ALTOONA, PENNSYLVANIA AND PART-
    LY IN LOGAN TOWNSHIP, CONTAINING 8,750 SQUARE FEET,
    MORE OR LESS, IN AREA;  AND DIRECTING THAT THE SAME
    BE STRICKEN FROM THE OFFICIAL CITY PLAN.
    "WHEREAS, the majority of property owners abutting on Ken-
    yon Road between Ruskin Drive and South 175 feet to lands of
    Martin Goodman, situate in the City of Altoona and partly in
    Logan Township, petitioned the Altoona City Council for said
    vacation (said petition attached hereto and made a part hereof),
    and,
    "WHEREAS, the members of the Council of the City of Altoona
    deem it expedient for the public good to vacate said Kenyon Road
    as hereinabove described,
    "THEREFORE, SECTION 1.  Be it ordained and enacted by the
    Council of the City of Altoona, that ALL THAT CERTAIN real
    portion of property situated in the City of Altoona, partly in the
    Township of Logan, County of Blair and Commonwealth of Penn-
    sylvania, and being more particularly described as follows:"
    [Here follows a description of Kenyon Road by metes and
    bounds in accordance with the plot plan attached to the ordi-
    nance.]
    ".   .   .  Containing 8,750 Square Feet, more or less, in area, be
    and the same is hereby vacated, and *it is further directed that the
    same be stricken from the City Plan subject to the reservation of
    Easements as hereinafter described.*
    "In accordance with Plan No. 9096, dated        .  , attached
    hereto and made a part hereof.
    "SECTION 2.  *Provided however, that the City does hereby
    reserve unto itself an easement extending the length and breadth,
    50' × 175' in the said Kenyon Road, as shown on attached Plan
    No. 9096, for the construction, maintenance and operation or
    reconstruction of utilities in, through, over or under the same.*

than vacate the street, however; it also reserved to the City an easement running the length and breadth of the road for the construction, maintenance and operation of utilities therein.[4] Goodman and other owners of property abutting the vacated street contested the validity of the ordinance, and the action of City Council in adopting it, to the court of common pleas. *See* Section 2920 of the Third Class City Code, Act of June 23, 1931, P.L. 932, art. XXIX (as amended), 53 P.S. § 37920. Following a hearing, that court upheld the ordinance[5] and a further appeal was taken to the Commonwealth Court. The Commonwealth Court reversed in part, voiding that provision of the ordinance which reserved to the City an easement for utility purposes in Kenyon Road. We then allowed the present appeal. We affirm.

### Dedication

The general principles of dedication of land were restated by this Court in *Horsham Township v. Weiner*, 435 Pa. 35, 41–42, 255 A.2d 126, 129 (1969):

> "SECTION 3. Provided that the vacation of the said Kenyon Road aforesaid is subject to the rights of all public utilities in said Kenyon Road, and the person or parties requesting such closing shall be responsible to said public utilities for any vacating, re-arrangement or relocating costs in the event the same are necessary without any costs to the City of Altoona, its successors or assigns.
>
> "SECTION 4. All costs incident to the above vacation to be paid by William T. Howe.
>
> "SECTION 5. All Ordinances or parts of Ordinances conflicting with the provisions of this Ordinance be and the same are hereby repealed. (Emphasis supplied.)

4. It does not appear from the record that any utility lines have even been placed in or along Kenyon Road. If there were any such utilities at the time of the adoption of the vacating ordinance, the ordinance placed upon the "parties requesting such closing" the responsibility for the costs of relocating utility lines. This portion of the ordinance is not involved in this appeal.

5. Although it sustained both the vacation of the street and the reservation of the easement, the court of common pleas did invalidate that portion of the ordinance which purported to deal with a segment of the vacated street which extended beyond the city limits of Altoona into Logan Township. That portion of the trial court's order is not contested on appeal.

" 'Dedication of land results when a landowner offers property for public use and it is accepted by or in behalf of the public . . . the dedication largely depends on the intention of the owner of the land.' *Coffin v. Old Orchard Development Corp.*, 408 Pa. 487, 491, 186 A.2d 906 (1962). 'Dedication has a partial analogy to a contract and requires a consideration of the elements of offer and acceptance. The offer of dedication may be made in a number of ways. It may be made by the express declaration of the party or by acts, deed or plat. . . . Dedication rests upon the intention of the owners, and the circumstances must indicate an abandonment of the property to the community. [Citing cases.] No particular formality is requisite to constitute a dedication upon the part of the owner. Any act which clearly indicates an intention to dedicate is sufficient.' Vendetti Appeal, 181 Pa.Super. 214, 220, 124 A.2d 448 (1956), quoted with approval in *Coffin v. Old Orchard Development Corp.*, supra, 408 Pa. at 491–92, 186 A.2d 906." [6]

Dedication of a public street does not invest the municipality with a fee title to the land on which the roadway rests. What the municipality acquires is the right to use, maintain, regulate and control that land as a street or road for the benefit of the public. Stated more succinctly, what the public obtains is a right of passage; the fee continues to be in the owner or owners of the land. See, *e. g., Horsham Township v. Weiner, supra; Hoffman v. Pittsburgh*, 365 Pa. 386, 75 A.2d 649 (1950); *Versailles Twp. Authority v. McKeesport*, 171 Pa.Super. 377, 90 A.2d 581 (1952). As we said in *Hoffman v. Pittsburgh, supra* :

**6.** Once a street is offered to a municipality by way of a plot or plan of lots, the municipal authority must act with respect to such an offer within twenty-one years to avoid a lapsing of the offer. *See* the Act of May 9, 1889, P.L. 173, No. 192, § 1, 36 P.S. § 1961; *Kramer Appeal*, 438 Pa. 498, 266 A.2d 96 (1970). Here, it is not in dispute that Martin Goodman properly offered Kenyon Road to the City of Altoona by including the road in the recorded subdivision of the property and that the City by its actions accepted the dedicating offer. Compare *Stozenski v. Borough of Forty Fort*, 456 Pa. 5, 317 A.2d 602 (1974).

" 'Where land is dedicated for street purposes by the owner and accepted by the municipality, such action is equivalent to a taking (10 R.C.L. 89, 91), and the property so taken may not lawfully be applied to another and distinct purpose by the municipality unless it be a public use not inconsistent with its use as a highway. In Sterling's App., 111 Pa. 35, 40, 2 A. 105, we said: "By appropriating land for the specific purpose of a common highway, the public acquires a mere right of passage with the powers and privileges incident to such right. The fee still remains in the landowner notwithstanding the public have acquired a right to the free and uninterrupted use of the road for the purpose of passing and repassing; he may use the land for his own purpose in any way that is not inconsistent with the public easement. He may, for example, construct underneath the surface passageways for water and other purposes, or appropriate the subjacent soil and minerals, if any, to any use he pleases, provided he does not interfere with the rights of the public. In other words, the only servitude imposed on the land is the right of the public to construct and maintain thereon a safe and convenient roadway, which shall at all times be free and open for public use as a highway." In Dillon on Municipal Corporations, 5th ed., section 1176, it is said: 'Not even the Legislature can authorize the condemnation of private property for other than a public use; hence the appropriation of a street to a private purpose cannot be justified, even by legislative authority.' " 365 Pa. at 394–395, 75 A.2d 649 at 652–53, quoting *Ormsby Land Co. v. Pittsburgh et al.*, 276 Pa. 68, 119 A. 730 (1923).

A municipality which accepts a dedicated street is not, however, restricted in its use of the street to the public's "right of passage" above; the municipality is entitled to make any additional use of the property consistent with its character as a public street. So long as the additional use constitutes no additional burden upon their properties, the abutting property owners are not harmed and are entitled to no damages by reason of such ancillary use. *Pittsburgh*

*National Bank v. Equitable Gas Company,* 421 Pa. 468, 220 A.2d 12 (1966). Nor does dedication impose upon a municipality a duty to maintain the roadway in perpetuity. Dedication, and acceptance thereof, requires only that the municipality make proper and conforming use of the dedicated land for as long a period as such designated use continues to serve the public interest. *Payne v. Kassab,* 468 Pa. 226, 361 A.2d 263 (1976). Hence, where the purposes for which the land was dedicated no longer exist or the public is no longer benefitted by such use, the municipality then has the power, and indeed sometimes the duty, to vacate the road. See *G. C. Murphy Co. et al. v. Redevelopment Authority,* 458 Pa. 219, 326 A.2d 358 (1974); *Titusville Amusement Co. v. Titusville Iron Works,* 286 Pa. 561, 134 A. 481 (1926). See also *City of McKeesport v. McKeesport & Reynoldton Passenger Ry.,* 2 Pa.Super. 242 (1896).[7]

### *Ordinance 4354*

From the foregoing discussion it is clear that in 1974 the City of Altoona had both the power and the duty to vacate Kenyon Road, a public street of the City, by enactment of an appropriate ordinance if the City Council deemed such action to be in the public interest. This is a normal function of city government, and judicial intervention is proper only where it appears that there has been an abuse of discretion or some clear violation of law in the exercise of that function. See, *e. g., Goodman Appeal,* 425 Pa. 23, 227 A.2d 816 (1967); *Blumenschein v. Pittsburgh Housing Au-*

7. The Third Class City Code, Act of June 23, 1931, P.L. 932, art. XXXIX, § 2915, as amended by the Act of June 28, 1951, P.L. 662, § 29, 53 P.S. § 37915 provides:

"Cities, with or without any petition of property owners, may open, widen, straighten, alter, extend and improve, and may establish or reestablish the grades of, and keep in order and repair and in safe passable condition, any street, or any part thereof, within the city limits, or may vacate and discontinue the same whenever deemed expedient for the public good, and provide for the payment of the cost thereof, either in whole or in part, from the general revenues of the city. Cities may vacate highways laid out by the Commonwealth within their limits, which highways have remained unopened for thirty years."

*thority,* 379 Pa. 566, 109 A.2d 331 (1954); *Titusville Amusement Co. v. Titusville Ironworks, supra.* The claim of appellees is that the City of Altoona could not legally vacate that road in the interests of the public and at the same time reserve to itself an easement extending throughout the area of the road for "the construction, maintenance and operation or reconstruction of utilities in, through, over or under the same," as ordinance No. 4345 provided. We agree.

When the public right to use Kenyon Road was validly terminated by the City of Altoona, the property reverted automatically and simultaneously to the abutting owners. See, *e. g., United States v. Certain Land in State of New Jersey,* 439 F.2d 670 (3d Cir. 1970); *Cohen v. Simpson Real Estate Corporation,* 385 Pa. 352, 123 A.2d 715 (1956); *Peterson Trustees of Second Presbyterian Congregation of Pittsburgh v. Public Parking Authority of Pittsburgh,* 383 Pa. 383, 119 A.2d 79 (1956); *Chambersburg Shoe Manufacturing Company v. Cumberland Valley Railroad Company,* 240 Pa. 519, 87 A. 968 (1913). The abutting owners are entitled to their full reversionary interests which the City may not dilute by imposing upon the dedication a burden not bargained for or contemplated; the dedication of Kenyon Road was for the purpose of affording the public a right of passage—not to benefit utility companies or their customers. Although an easement for utilities in and along Kenyon Road may not have been incompatible with its use as a roadway and would not have interfered with rights of the owners of the underlying fee, as long as the roadway was in use, *Pittsburgh National Bank v. Equitable Gas Company, supra,* there is no reason to suppose that the easement for utilities would be consistent with the purposes for which the land could now be used by the abutting owners after the cessation of the dedicated use.

In sum, we hold that when Altoona terminated the use for which the land was dedicated, it could not at the same time reserve the right to an ancillary use not stipulated for in the original dedication. See, *e. g., Mayor & Council of Rockville v. Geeraert,* 261 Md. 709, 276 A.2d 642 (1971);

*Gable v. City of Cedar Rapids*, 150 Iowa 108, 129 N.W. 737 (1911); *Illinois ex rel. Greer v. City of Chicago*, 154 Ill.App. 578 (1910). But see and compare, *Pallisades Properties, Inc. v. Burnetti*, 44 N.J. 177, 207 A.2d 522 (1965).

The order of the Commonwealth Court is affirmed.

PACKEL, former J., did not participate in the decision of this case.

ROBERTS, J., filed a dissenting opinion in which NIX, J., joins.

ROBERTS, Justice, dissenting.

I dissent. In my view, common sense and public policy dictate the conclusion that a municipality may reserve an easement for utility lines running along a street acquired by dedication and acceptance which it proposes to vacate. The crux of the majority's opinion is the conclusion that this reservation serves only to benefit utility companies and therefore represents a burden not contemplated by the abutting landowners. This unsupported assertion does not take account of the nature of dedication and acceptance of streets.

Appellees concede that, after it accepts a dedicated street, a municipality may apply the street to any public service and that public services consistent with use of the street as a public thoroughfare include installation of public utilities. *Pittsburgh National Bank v. Equitable Gas Company*, 421 Pa. 468, 220 A.2d 12 (1966). After vacation no less than before, abutting landowners, and the public, receive a benefit from utility lines running along the street. The majority thus errs when it concludes that reservation of an easement for utility lines does not provide a benefit to either the public or abutting landowners. The real issue is whether the reservation is beyond the contemplation of the parties.

The majority recognizes that dedication and acceptance are contractual in nature in that the abutting landowner and the municipality each give up something in return for something else. *Horsham Township v. Weiner*, 435 Pa. 35, 255

A.2d 126 (1969). The landowner yields his right to enjoy a private street but receives all the benefits accruing from public maintenance of streets, including repair, cleaning and utility services. The municipality undertakes the obligation to maintain the street in a safe and usable condition and in return has public use of a street which otherwise would be available exclusively to private landowners. There is no reason to believe that appellees, or landowners in general, dedicate a street with the understanding that once a municipality withdraws from some of the obligations and corresponding benefits of acceptance, it will withdraw from all. Rather, the public and the abutting landowners both have much to gain if the municipality may reserve an easement for utility usage. Thus, there is good reason to believe that if the landowner has any expectation at all, it is that the city may continue to derive some benefit from the street so long as he receives value in return for the benefits the municipality retains.

The majority's all or nothing attitude will deter municipalities from accepting streets because they rightly will calculate that the benefits to the public from acceptance will not match the costs. Conversely, the majority's approach imposes upon a municipality the costly burden of maintaining a street which it believes unnecessary for public travel although of use for utility services. It is not likely that either of these consequences was within the expectation of the parties.

When, as here, the parties' intent cannot be ascertained, the agreement should be construed in a manner which comports with their likely intent and with public policy. Here, both goals are furthered by a conclusion that a municipality may, in the absence of an intent to the contrary, reserve an easement for utility usage on a street the municipality proposes to vacate.

Perhaps because the truth of this conclusion has for years been assumed, the issue has received little judicial attention. The only case to the contrary is *Illinois ex rel. Greer v. City of Chicago*, 154 Ill.App. 578 (1910). The Supreme Court of

New Jersey, however, has stated that "a municipality has the power, and under certain circumstances the duty, to append a condition to a street vacation to assure that the land thus relieved of the public easement will be employed for the . . . general public interest." *Palisades Properties, Inc. v. Brunette*, 44 N.J. 117, 139, 207 A.2d 522, 536 (1965). Neither decision provides a persuasive reason for its result. In view of the paucity of authority, no considerations of stare decisis restrain us from establishing a sound rule reflecting reality. I believe the better rule is that a municipality may retain a utility easement in a vacated street unless the parties have otherwise agreed. I would therefore reverse the decision of the Commonwealth Court and reinstate the order of the court of common pleas.

NIX, J., joins in this dissenting opinion.