# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah A. Sechrist and Bill W.     :
Morgan                                 :
                                       :
          v.                       :    No. 941 C.D. 2022
                                       :    ARGUED: September 11, 2023
Joseph D. Danish and Maria A. Danish, :
                  Appellants     :


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE STACY WALLACE, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**                 **FILED: February 20, 2024**


Appellants, Joseph D. Danish and Maria A. Danish, appeal from a judgment and decree of the Court of Common Pleas of Huntingdon County entering judgment in favor of Deborah A. Sechrist and Bill W. Morgan (together, the Morgans)[1] and finding that a private road exists across the Danish Property in favor of the Morgan Property. For the following reasons, we reverse.

## I. Background

The Danish Property and the Morgan Property are large, rural parcels of adjoining land.[2] Both properties are located in Shirley Township, Huntingdon

---

[1] While Bill W. Morgan and Deborah Ann Morgan Sechrist are brother and sister, rather than husband and wife, we will refer to them as "the Morgans" for ease of reference. *See* Reproduced Record (R.R.) at 51. We note that the page numbers of the Reproduced Record are not followed by a small a, as required by Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173.

[2] The Danish Property consists of approximately 159 acres, and the Morgan Property approximately 90 acres. *See* R.R. at 3-4.

County, and both have frontage along Hill Valley Road, State Route 747. The Morgans claim that a private road, commonly referred to as Ridge Road,[3] exists across the Danish Property, connecting the Morgan Property to Hill Valley Road.[4]

At the crux of this case is a dispute between the parties regarding the extent Ridge Road existed and was used prior to 1963, i.e., whether Ridge Road existed as a private road at that time. It is undisputed, however, that in 1963, the Township passed Ordinance No. 1963-4[5] pertaining to Ridge Road titled "AN ORDINANCE OF THE TOWNSHIP OF SHIRLEY, COUNTY OF HUNTINGDON AND COMMONWEALTH OF PENNSYLVANIA, ADOPTING AND TAKING OVER A CERTAIN ROAD IN THE SAID TOWNSHIP OF SHIRLEY AS A PUBLIC ROAD." Reproduced Record (R.R.) at 12-13, 107. The language of Ordinance No. 1963-4 refers to both adopting Ridge Road as an existing road and opening the road. *See* R.R. at 14 (stating "[a] draft of said road proposed *to be opened*," and "following a hearing in consideration of the *laying out* of the said road," as well as providing that the road "be *adopted* and taken over by the Township" as a public road) (emphasis added).

The parties further agree that Ridge Road was open and maintained as a public road from 1963 until 1995. R.R. at 109. However, "as time went on, the public need for [] Ridge Road diminished, and [] dumping along the road – particularly on the upper portion across the Morgan Property – became a serious issue." R.R. at 111. Because of this, the Morgans' father and predecessor in interest,

---

[3] The road at issue is also referred to by the parties and throughout the record as Nebo Road. Ridge Road is basically an extension of Nebo Road.

[4] A more extensive description of Ridge Road can be found in the trial court opinion. *See* R.R. at 105-07. Ridge Road is further depicted on a map admitted into the trial court record as Danish Exhibit 1. *See* R.R. at 94.

[5] Shirley Twp., Huntingdon County, Pa., Ordinance No. 1963-4 (1963).

2

Bill L. Morgan (Father), led a petition drive in 1995 to have Ridge Road vacated so that it could be gated off. Father obtained the necessary number of signatures from surrounding property owners, including Mr. Danish, to petition the Township to close Ridge Road. *See* R.R. at 19. On September 27, 1995, the Township enacted Ordinance No. 1995-2,[6] which provides, in pertinent part:

> The Township [] hereby vacates any and all right, title[,] and interest it has in the section of [Ridge] Road (Shirley Township Route 407) between Wrangletown Road and State Route 747 *such that all right title and interest thereto reverts to the owners of any properties* which either adjoin or totally encompass that section of the former township road.

R.R. at 17, 113 (emphasis added). Notably, Ordinance No. 1995-2 does not specify that Ridge Road shall revert to or become a private road upon the vacation. The parties agree that a gate was placed across Ridge Road shortly after Ordinance No. 1995-2 took effect, and that the illegal dumping ceased. They strongly disagree, however, "with respect to the intended situation after the closing of [Ridge R]oad, what use had been made of the road after it was closed, and who had the ability to get through the gate." R.R. at 113.

The underlying dispute arose after the Morgans subdivided a portion of their property into three lots, with the intent to use Ridge Road for access. At the request of the prospective buyer, the Morgans asked the Danishes for written confirmation of the existence of Ridge Road and the Morgans' right to its use. The Danishes refused to provide such confirmation and indicated their intent to interfere with the Morgans' use of Ridge Road.

---

[6] Shirley Twp., Huntingdon County, Pa., Ordinance No. 1995-2 (1995).

Because of this, the Morgans filed a declaratory judgment action in the trial court in September 2020. The complaint sought a declaration "that [Ridge] Road constitutes a 25'[-]wide easement for the purposes of ingress, egress[,] and regress to and from the [Morgan] Property," as well as entry of an order in the Office of the Recorder of Deeds confirming same. R.R. at 7. The sole count of the complaint averred that when a township vacates a public road via ordinance, a private road is created by operation of Section 1 of what is commonly known as the Private Road Act,[7] 36 P.S. § 2781, with a right-of-way of 25 feet. R.R. at 6 [citing *Schantz v. Bahry*, 43 A.3d 536, 542-43 (Pa. Cmwlth. 2012)]. The Morgans further requested "a permanent injunction which enjoins the [Danishes], their heirs, successors[,] and assigns from obstructing or preventing the use of [Ridge] Road for ingress, egress[,] and regress, to and from the [Morgan] Property[.]" *Id.*

The Danishes filed a preliminary objection asserting that the complaint should be dismissed for failure to join indispensable parties. *See* R.R. at 22-26. They maintained that the parcels of nine other property owners would be impacted by the declaratory judgment action since Ridge Road crosses their properties as well, and that the trial court could not adequately address the Morgans' claim absent their joinder as parties. The Morgans filed both a response in opposition as well as a preliminary objection to the preliminary objection, arguing that it should be dismissed as untimely.[8] The trial court overruled the preliminary objection regarding indispensable parties and declined to address the issue of timeliness. R.R. at 37.

---

[7] Act of April 17, 1929, P.L. 530, 36 P.S. §§ 2731-2891.

[8] Counsel for the Morgans claimed that while he consented to the Danishes' request for an extension of time to file a "responsive pleading," he did not specifically consent to such an extension for the purpose of filing preliminary objections. R.R. at 29. Moreover, while the Danishes were served with the complaint in October 2020, their preliminary objection was not filed until March 26, 2021, making it untimely. *Id.*

The matter proceeded to a bench trial on November 1, 2021. The Morgans presented the testimony of Kenneth Mentzer, whose grandparents previously owned the Morgan Property. Mr. Mentzer lived on the Morgan Property from his birth in 1938 until 1950. He personally traveled Ridge Road many times in the 1940s and stated that members of the general public, not just individuals who lived on the road, used it as a shortcut between Wrangletown Road and Hill Valley Road. R.R. at 107. Mr. Mentzer further testified: "It was an open road until I left." R.R. at 49.

Ms. Sechrist testified that she helped her father circulate the petition to vacate Ridge Road in 1995 because people from surrounding areas were dumping trash, including large tires, on the Morgan Property. In one instance, large tractor tires were dumped and rolled down the ridge, damaging the Morgans' corn field and landing near their house. Ms. Sechrist contacted both the Pennsylvania State Police and the Department of Environmental Protection (DEP) about the dumping and DEP recommended that she petition the Township to vacate the road.

Ms. Sechrist stated that after Ordinance No. 1995-2 went into effect, her father and brother (Mr. Morgan) made and installed two metal gates, one for each end of Ridge Road. Father put the lock on the gate on the Hill Valley Road (Danish) side, gave a key to the Danishes, and kept a key for himself, which he signed. Father gave the key for the Wrangletown Road gate to one of the landowners on that side and instructed him to distribute copies to the other landowners along Ridge Road. Ms. Sechrist and her family continued to use Ridge Road after it was vacated, and no one ever stopped or prevented her or her family from using it. She and her husband have continued to use Ridge Road from time to time to access the upper portion of the Morgan Property, including to hunt and cut firewood.

5

Mr. Morgan's testimony corroborated that of Ms. Sechrist. Particularly, in 1995, he and Father installed the gate on the Danish Property approximately 20 feet off the highway. They gave Mr. Danish a key and kept one for themselves. Not only did Mr. Danish never prevent Mr. Morgan from using Ridge Road or ask him to take down the gate, but Mr. Danish "maintained the road and mowed up his side after we closed it and mowed ours clear to the top for us. We are good neighbors." R.R. at 66. According to Mr. Morgan, the public has not used Ridge Road since 1995, but he continues to use it for hunting and cutting firewood. When asked what relief he was requesting, Mr. Morgan stated:

> I would like the [trial c]ourt to rule that we would have the right-of-way that we always thought we had. We have used it. I was born in 1956 so I can remember them opening it. We have always used it. Long before. I can remember my dad [sic] before it was a [T]ownship road.

R.R. at 67-68. On cross-examination, Mr. Morgan clarified that he usually takes a four-wheeler up and down Ridge Road, not a car, and the last time he actually passed through the gate on the Danish Property was five to eight years ago. R.R. at 68.

For his part, Mr. Danish testified that he was born in 1947 and has lived on the Danish Property all his life. When asked what Ridge Road looked like prior to the Township taking over in 1963, he replied

> [i]t was an old one-lane road. Just a few people used it. It wasn't a good road. It was a one-lane road. When the [T]ownship took it over, it was in very, very bad shape because nobody had ever done a whole lot to it. It kind of resembles – it started out years and years ago as an old [I]ndian trail that goes across the ridge then down over.

R.R. at 71. Mr. Danish went on to explain that

[a]s time went on, somebody else would use it, and then it would pick up a couple other users. But it never had a lot of traffic. It was out by itself. And all of us property owners, it was just a pain in the neck to us; especially [the Morgans'] dad, because there was a limited amount of traffic on it. The guys would come in at midnight or [one] o'clock and dump pickup loads of garbage. They could dump it and get out of there. Nobody could see who they were.

*Id.* After the Township opened Ridge Road, it "fixed it up some. But I wouldn't say a lot because it still basically was a one-lane road. I mean it's not 33 feet wide like the papers say a township road should be." R.R. at 72.

Mr. Danish confirmed that the reason Father petitioned to have the Township close Ridge Road was the illegal dumping and that he signed the petition "to help [his] neighbor out[.]" R.R. at 73. When Mr. Danish signed the petition in 1995 he did not believe he was giving Father or anyone else private use of Ridge Road. *Id.*

Mr. Danish stated that he paid Father $50 to install the gate on the Danish Property because he was away working at the time. R.R. at 82. According to Mr. Danish, Father did not place the lock on the gate, but rather told *him* to do so for liability purposes. R.R. at 74; *see also* R.R. at 82. Mr. Danish still has a key to that gate, and disagreed that the Morgans had a key since he was the one who installed the lock. R.R. at 82. He also was unaware of a gate at the Wrangletown Road end of Ridge Road. R.R. at 76. Mr. Danish further noted that the Morgans already have access to a public road because their property fronts along Hill Valley Road, but Mr. Morgan told him they wanted confirmation of their right to use Ridge

7

Road so they could subdivide and sell parts of their property for more money. R.R. at 76, 79-80.[9]

Mr. Morgan testified on rebuttal that he had a key to the gate in his pocket and that he had given pipeline workers that key to use the gate in the past. R.R. at 85. He also confirmed that it was Father's writing on the key and that it should not be a surprise to Mr. Danish that he had a key to the gate. *Id.*

On February 1, 2022, the trial court issued a judgment and decree, as well as an opinion in support thereof, declaring a private road exists across the Danish Property in favor of the Morgan Property. *See* R.R. at 96-99, 105-27. Notably, the judgment and decree is specifically limited to a *portion* of Ridge Road, namely the portion that passes over the Danish Property. R.R. at 96, 98.[10]

The trial court rejected the Morgans' argument that pursuant to Section 1 of the Private Road Act, 36 P.S. § 2781, Ordinance No. 1995-2 automatically rendered Ridge Road a private road when the Township vacated its status as a public road. Unlike in *Schantz*, 43 A.3d 536, the ordinance here does not contain specific language designating the vacated road as a private road. Nonetheless, the trial court determined that the language that *is* included in Ordinance No. 1995-2 and Ordinance No. 1963-4, along with the evidence presented at trial as to how Ridge Road was used prior to 1963, results in a finding that a private road exists today.

---

[9] The Danishes also presented the testimony of George McKnight, who has lived on Hill Valley Road across from the gate on the Danish Property since 2017. In that time, he has used the gate to hunt but never witnessed the Morgans go through the gate. R.R. at 84.

[10] Oddly, the trial court did not suggest, let alone decree, what was to become of the remainder of Ridge Road, which lies adjacent to the other property owners who were the subject of the Danishes' preliminary objection relating to indispensable parties. We need not here consider the propriety of such a partial declaration, but it would seem to suggest that the preliminary objection was not devoid of merit.

The trial court held that the Township did not and could not "open" the private road in 1963 since it was already in use. *See Appeal of Kress*, 189 A.2d 848 (Pa. 1963). Rather, "the intent and effect of Ordinance [No.] 1963-4 was to establish a public road by dedication." R.R. at 122 (citing the fact that Ordinance No. 1963-4 provides that the Township is "adopting" Ridge Road and the credible testimony that Ridge Road had been in existence as a private road open to use by the public for decades prior to 1963). The trial court explained that "[w]here a municipality establishes a public road via dedication, it does not take fee title to the land underlying the road. Instead, it obtains only a right[-]of[-]way, which may be used for all purposes consistent with the operation and maintenance of a public road." R.R. at 124 [citing *In re City of Altoona*, 388 A.2d 313 (Pa. 1978)]. Concomitantly, upon vacating the dedicated road, the property reverts to the abutting owners, "who are entitled to their full reversionary interests[.]" R.R. at 125 (quoting *In re City of Altoona*). Here, the trial court determined that the "full reversionary interests" means that both the Morgan Property and Danish Property are encumbered by the private road, i.e. Ridge Road.

The Danishes subsequently filed a motion for post-trial relief, which the trial court denied in its entirety, and this appeal followed.

## II. Issues

The Danishes raise the following three issues on appeal, which we have paraphrased and reordered for ease of discussion: (1) whether the trial court erred in refusing to grant a new trial when the allegation that Ridge Road existed as a private road prior to 1963 was not pled in the complaint or raised at trial; (2) even if it was adequately pled, whether the trial court erred in determining that Ridge Road existed as a private road prior to 1963, when no evidence of an express or implied easement

9

was offered at trial;[11] and (3) whether the trial court erred in denying the Danishes' preliminary objection and post-trial motion regarding failure to join indispensable parties.

### III. Discussion

The Danishes argue that the trial court erred in denying their motion for post-trial relief and request for a new trial when the "fact" that Ridge Road was a private road prior to 1963 was neither pled in the complaint nor advanced at trial. Danishes' Br. at 21. They maintain that the trial court erred by *sua sponte* introducing the "issue" that Ridge Road existed as a private road prior to 1963 and that the Morgans never sought to enforce such a private right. *Id.* According to the Danishes, the trial court overstepped its bounds by raising this new "claim" and acting as the Morgans' advocate. *See Wojciechowski v. Murray*, 497 A.2d 1342 (Pa. Super. 1985). We disagree.

While the "complaint is not a paragon of precise draftsmanship," R.R. at 152, it does sufficiently aver and put the Danishes on notice of the Morgans' claim that Ridge Road existed as a private road prior to 1963. The complaint alleges: "Prior to 1963, [Ridge] Road was used by persons to gain access to [the Morgan P]roperty and other persons as it connected Wrangletown Road and Hill Valley Road," R.R. at 5; and "[the Morgans] *and their predecessors* have used [Ridge] Road without conflict or issue with [the Danishes] until [the Morgans] entered into an agreement of sale to subdivide and convey portions of [the Morgan] Property," R.R.

---

[11] Within this issue, the Danishes also argue in their brief to this Court that a prescriptive easement cannot arise due to the Unenclosed Woodlands Act, Act of April 25, 1850, P.L. 569, *reenacted and amended by* the Act of July 1, 1981, P.L. 198, *as amended*, 68 P.S. § 411. However, the Danishes failed to raise this issue during the trial court proceedings and cannot raise it for the first time on appeal. *In re Petition for Appointment of Bd. of Viewers*, 149 A.3d 911, 914 (Pa. Cmwlth. 2016).

at 6 (emphasis added). Moreover, the testimony and argument at trial put the status of Ridge Road prior to 1963 squarely at issue. Mr. Morgan specifically testified as to how and by whom Ridge Road was used prior to 1963. This was the sole subject of Mr. Mentzer's testimony, and Mr. Danish himself testified on the subject. In addition, Counsel for both parties addressed the issue during closing arguments. Counsel for the Morgans stressed that Ridge Road was in existence and used as a private road since at least 1940. Notably, Counsel for the Danishes argued as follows:

> And I would note that prior to 1963 there was no private interest in using this road. It was solely with the consent of the land[]owners. None of the adjoining property owners had a recorded easement. None of the adjoining land[]owners had raised any issue of a prescriptive easement. The use was always with the consent of the land[]owners. It was not adverse to them.
>
> . . . .
>
> Prior to 1963 it was a completely private section of road. In 1995 all [the] Township did was give it back to the people that [it] had taken it from.
>
> So we stand here today in the same position we were in 1962. And that is, this is a pathway that crosses private property. There is no recorded easement. There is no prescriptive easement. The title reverted to my client[.]

R.R. at 90-91. As such, the Danishes' claim that the issue was not sufficiently pled or raised during trial, so as to give them adequate notice and preserve the issue, lacks merit. *See Schnarrs v. Rush Twp. Bd. of Supervisors*, 210 A.3d 1161, 1173 (Pa. Cmwlth. 2019).

11

Turning to the substance of this matter, the Danishes argue that the trial court's determination that Ridge Road existed as a private road prior to 1963 is neither legally nor factually supported. While we ultimately agree with these assertions, some background is warranted.

The Morgans' complaint averred that when the Township vacated Ridge Road as a public road via Ordinance No. 1995-2, a private road was created by operation of Section 1 of the Private Road Act, 36 P.S. § 2781. That section, titled "Retention of vacated public road as private road," provides:

> Whenever viewers, appointed by the court of quarter sessions to view and vacate any public road within this Commonwealth, shall find and report that there is no necessity for such public road, but shall recommend in their report that the route thereof, or of any portion thereof, be and remain a private road, upon the approval of their said report and the confirmation thereof by the court and the vacation of said public road, *the court shall have power to enter a decree that the route of such abandoned public road, or any portion thereof, so recommended for a private road, shall be and become a private road*, of the width of twenty-five feet, for the use and benefit of the owners of lands through or along which it passes, to be maintained and used as private roads are now maintained and used under existing laws.

*Id.* (emphasis added). As this Court has explained, "Section 1101 of The Second Class Township Code[12] was enacted . . . after Section [1], and gives the Township the power to vacate roads." *Schantz*, 43 A.3d at 541.

Contrary to the Morgans' assertion, the trial court correctly found that this provision does not automatically render a public road, upon its vacation, a

---

[12] Act of May 1, 1933, P.L. 103, *as amended*, *formerly* 56 P.S. § 66101, now appearing in Section 2304 of The Second Class Township Code, Act of November 9, 1995, P.L. 350, 56 P.S. § 67304.

12

private road. Rather, the plain language of the statute "affords the trial court discretion 'to enter a decree that the route of such abandoned public road, or any portion thereof, so recommended for a private road, shall be and become a private road[.]'" *Hudock v. Saltlick Twp.* (Pa. Cmwlth., Nos. 321 & 391 C.D. 2021, filed Nov. 16, 2022), slip op. at 12[13] (quoting Section 1 of the Private Road Act, 36 P.S. § 2781). *See also Schantz*, 43 A.3d at 541 (citing *Glennon v. Zoning Hearing Bd. of Lower Milford Twp.*, 529 A.2d 1171 (Pa. Cmwlth. 1987), for the proposition that the road at issue "was not an approved private street merely because it was a vacated public road"). Here, Ordinance No. 1995-2 vacating Ridge Road as a public road does not contain explicit language decreeing it, or any portion thereof, to be a private road. As such, the trial court properly denied the Morgans' statutory claim based solely upon operation of Section 1 of the Private Road Act.[14]

This does not end the inquiry, however. To determine the current status of Ridge Road, the trial court appropriately turned its attention to the remainder of Ordinance No. 1995-2 which expressly provides that upon the Township's vacating of Ridge Road, "all right title and interest thereto *reverts to the owners of any properties*" adjoining Ridge Road. R.R. at 17, 113 (emphasis added). Given this language, it was incumbent on the trial court to determine what interest the adjoining property owners previously had – e.g., prior to 1963 – to know what interest in Ridge Road, if any, reverted. As the trial court aptly noted, the Township could not give to the Morgans, via reversion, greater title to the land underlying Ridge Road than

---

[13] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Pennsylvania Rule of Appellate Procedure 126(b)(1), Pa.R.A.P. 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[14] As the trial court noted, *Schantz* is not controlling because the ordinance in that case vacated the public road *and expressly designated* it as a private road. *See Schantz*, 43 A.3d at 538.

the Township received when it enacted Ordinance No. 1963-4. *See* R.R. at 119. It is within this examination that the trial court lost its way.

In considering the status of Ridge Road prior to 1963, the trial court's analysis equates any pathway that is not a public road with a "private road" and the mere use of such a rural roadway with its "opening," thus overlooking the fact that the Private Road Act establishes a method for opening a private road. Section 11 thereof provides, in pertinent part:

> The several courts of quarter sessions shall, in open court as aforesaid, upon the petition of one or more persons . . . for a road from their respective lands or leaseholds to a highway or place of necessary public resort, or to any private way leading to a highway, . . . direct a view to be had of the place where such road is requested, and a report thereof to be made[.]

Act of June 13, 1836, P.L. 551, 36 P.S. § 2731. Further, Section 12 of the Private Road Act states, "[i]f it shall appear . . . that such road is necessary, the said court shall direct what breadth the road so reported shall be opened . . . and thenceforth such road shall be deemed and taken to be a lawful private road." 36 P.S. § 2732. There simply is no allegation in the Morgans' complaint that the above process was followed, nor is there evidence of any such process in the record.[15]

---

[15] Moreover, it is doubtful the Morgans would be able to meet the requirements for a petition to open a private road, as such a "petitioner must demonstrate both that the road is necessary and that opening it will serve a public purpose." *In re Adams*, 212 A.3d 1004, 1012 (Pa. 2019) (citations omitted). As our Supreme Court has explained:

> Under the [Private Road] Act, a court may open a private road if the board of view's report determines that "such road is necessary." 36 P.S. § 2732. While the [Private Road] Act does not define "necessary," Pennsylvania courts have consistently construed it to require the "strictest necessity" because the [Private Road] Act is a

**(Footnote continued on next page…)**

14

The Danishes further argue that the trial court's decree, in reality, is based upon a finding that an easement exists across the Danish Property for the benefit of the Morgan Property, although such a theory is not articulated in the trial court's analysis. At all events, there is not adequate evidence in the record to support such a determination. For example, there is no evidence in the record of any deeds establishing: the existence of an express easement; unity of title, as required for an easement by implication or necessity;[16] or the 21-year period of ownership necessary for a prescriptive easement to arise.[17] Moreover, the record here demonstrates that, up until just prior to institution of their lawsuit, the Morgans' use of Ridge Road was with the consent of the Danishes and not adverse to them.

Finally, given the above determination, we need not reach the Danishes' argument that the trial court erred in denying their preliminary objection and motion for post-trial relief due to failure to join indispensable parties.

---

form of eminent domain. However, absolute necessity is not required; thus, a property does not have to be completely landlocked. Nonetheless, mere inconvenience is not sufficient, and an existing road must be of a limited privilege or extremely difficult and burdensome to use.

*Id.* at 1013 (internal citations and quotations omitted). Further, "a determination of necessity must be based on the present use of the property . . . because a contemplated necessity does not meet the strictest necessity requirement of the [Private Road] Act." *Id.* at 1014. Here, the Morgan Property is not landlocked as it has "frontage along Hill Valley Road, State Route 747." R.R. at 105. The Morgans' purported necessity also appears to be tied to their prospective rather than their present use, as they admittedly approached the Danishes to confirm their use of Ridge Road because they subdivided the property and wish to sell it, but purportedly cannot do so without this confirmation.

[16] *See Tricker v. Pa. Turnpike Comm'n*, 717 A.2d 1078, 1081-82 (Pa. Cmwlth. 1998).

[17] *See Rachel Carson Trails Conservancy, Inc. v. Dep't of Conservation and Nat. Res.*, 201 A.3d 273, 278 (Pa. Cmwlth. 2018) ("A prescriptive easement arises where the use of an easement has been adverse, open, notorious[,] and uninterrupted for [21] years.") (quotation and citation omitted).

## IV. Conclusion

In short, there is no allegation in the complaint or any evidence in the record demonstrating that Ridge Road was ever laid out and opened as a private road pursuant to the Private Road Act. Moreover, use alone does not establish a private road or create an easement. As such, we reverse and instruct the trial court to enter judgment in favor of the Danishes.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah A. Sechrist and Bill W.   :
Morgan   :
  :
      v.   :   No. 941 C.D. 2022
  :
Joseph D. Danish and Maria A. Danish,   :
                Appellants   :

# O R D E R

AND NOW, this 20th day of February, 2024, the order of the Court of Common Pleas of Huntingdon County (trial court) is hereby reversed. The trial court is instructed to enter judgment in favor of Joseph D. Danish and Maria A. Danish.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita